# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No.
Cellular telephone assigned call number (262) ) 20-1070M(NJ)
308-3368, with International Mobile Subscriber Identity )
311480570900351 (the "Target Cell Phone") )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A

located in the    Eastern    District of    Wisconsin   , there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 (a) (1) | See attached affidavit |

The application is based on these facts:
See attached affidavit

☐ Continued on the attached sheet.
☐ Delayed notice of  30  days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

STEVEN DESCHLER (Affiliate) Digitally signed by STEVEN DESCHLER (Affiliate)
Date: 2020.10.27 10:25:51 -05'00'

*Applicant's signature*

Steven Deschler, DEA TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
   telephone    *(specify reliable electronic means)*.

Date: October 27, 2020

*Judge's signature*

City and state:   Milwaukee, WI.   Honorable Nancy Joseph
*Printed name and title*

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Steven H. Deschler, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(262) 308-3368,** with International Mobile Subscriber Identity 311480570900351 (the "Target Cell Phone"), whose service provider is Verizon, a wireless telephone service provider headquartered in New York, NY. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Detective with the Kenosha Police Department and have been since October 1, 1997. On May 17, 2017, I was deputized as a Task Force Office with the Drug Enforcement Administration. I was a member of the Kenosha Drug Operations Group from January 2009 to December 2016 and have held a position in other Speical Investigation Units since January 2003.

3. As a local and federally sworn law enforcement officer, I have participated in the investigation of narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, millions of dollars in United States currency and other evidence of criminal activity. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled

substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, court-ordered wiretaps, analysis of phone and financial records, and arrests of numerous drug traffickers. I have been the affiant on many search warrants. I have also spoken on numerous occasions with other experienced narcotics investigators, concerning the methods and practices of drug traffickers and money launderers. Furthermore, I have attended training courses which specialized in the investigation of narcotics trafficking and money laundering. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

4. In that capacity, I am charged with conducting investigations of violations of Federal Law including possession and distribution of controlled substances. I have gained experience in the conduct of such investigations through previous case investigations, formal training, and in consultation with law enforcement partners in local, state and federal law enforcement agencies.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is intended to show

merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 USC 841 (a) (1) have been committed, are being committed, and will be committed by Ronnie MITCHELL DTO members. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations **21 USC 841 (a) (1)**, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

*7.* During December 2019 the Racine County Sheriff Office Metro Drug Unit (MDU) initiated a drug investigation of the Ronnie MITCHELL Drug Trafficking Organization (DTO) in which numerous DTO members are distributing fentanyl, heroin, crack cocaine, Oxycodone pills, and Suboxone strips in Racine, Wisconsin. DEA Special Agents and Task Force Officers and MDU Agents have utilized three different Confidential Sources (CS) to conduct over 70 controlled purchases of fentanyl, heroin, crack cocaine, ecstasy, Suboxone strips, and Oxycodone pills. The three DEA CSs utilized phone number (224) 717-6253, (The first MITCHELL DTO drug phone number) from approximately December 2019 to June 2020 to arrange the purchase of controlled substances. During the end of June 2020, case agents learned from a DEA CS that the MITCHELL DTO was using a new phone number of **(262) 308-3368** (the "Target Cell Phone"), to arrange the purchase of controlled substances with the DTO's customers. The DTO members work different shifts distributing controlled substances for the MITCHELL DTO throughout the week. As a result, case agents and Confidential Sources do

3

not know which DTO member would answer the phone, meet with the CS, and deliver the controlled substances prior to arranging the purchase.

   *8.*     Based on information from the Confidential Sources, recorded phone calls, and observations during CS' purchases of controlled substances, case agents developed a hierarchy/rank structure in the DTO. Ronnie R. MITCHELL is believed to be the DTO's source of supply. Devereaux A. PATTON was identified as the head of the DTO in Racine, Wisconsin. Stevie L. PATTON Jr., Martiese D. HUDSON, Brian J. EDWARDS, Terry N. MCLAIN, Angela M. BRZINSKI, Menachin O. BROWN, Deshawn T. CHATMAN, Alexander MONETTE, Brian SAUNDERS, April DAVIS, Dawneitha GANT, and Shane TRENTADEU were identified as 'runners' and selling controlled substances for the DTO.

   *9.*     Between December 2019 and the end of June 2020, case agents utilized the three Confidential Sources to conduct a minimum of 70 purchases of controlled substances, to include fentanyl, heroin, crack cocaine, ecstasy, Suboxone strips, and Oxycodone pills from MITCHELL DTO members, to include Ronnie R. MITCHELL, Devereaux A. PATTON, Stevie L. PATTON Jr., Martiese D. HUDSON, Brian J. EDWARDS, Terry N. MCLAIN, Angela M. BRZINSKI, Menachin O. BROWN, Deshawn T. CHAPMAN, Alexander MONETTE, Brian SAUNDERS, April DAVIS, Dawneitha GANT, and Shane TRENTADEU. The three Confidential Sources individually called **(**224) 717-6253**,** (the first MITCHELL DTO drug phone number) from December 2019 to June 2020, to arrange the purchases of controlled substances.

   *10.*    On June 29, 2020, Racine County Sheriff's Office Metro Drug Unit (MDU) Agent Tom Knaus spoke with CS #2. CS #2 told MDU Agent Knaus that the MITCHELL DTO members were now utilizing a new "dope phone" to conduct their illegal drug sales. MDU Agent Knaus instructed CS #2 to make a telephonic recording to (224) 717-6253 (the first

4

MITCHELL DTO drug phone number) in order to try to obtain the new "dope phone" number that is being utilized by the MITCHELL DTO members. When CS #2 called (224) 717-6253, a voicemail message was left that said, "You can reach us at (262) 308-3368…**(262) 308-3368."** (the "Target Cell Phone")**.**

    *11.*      Between June 2020 and September 2020, Metro Agents utilized two Metro Confidential Sources to conduct a minimum of ten purchases of controlled substances, to include heroin (suspected fentanyl), crack cocaine, and Suboxone strips from MITCHELL DTO members, to include Ronnie MITCHELL, Stevie L. PATTON Jr., Angela M. BRZINSKI, Menachin O. BROWN, Lamarr D. MCCLELLAN and Brian SAUNDERS, The two Confidential Sources individually called **(262) 308-3368,** (the "Target Cell Phone") from June 2020 to September 2020, to arrange the purchases of controlled substances. The following details the most recent controlled substance purchases:

> *a.* On 06/29/2020, Metro Drug Unit Agent Knaus met with CS #2, in order to conduct a heroin (suspected fentanyl) buy. The CS called **(262) 308-3368**, (the "Target Cell Phone") spoke with an unknown male, and arranged to purchase 1/2 gram of heroin (suspected fentanyl). The CS waited at Colonial Liquor, 2813 Taylor Avenue, Racine, WI for the unknown male. MDU Agents observed Brian SAUNDERS and an unknown white female arrive in a red Chevy Sonic bearing a Wisconsin temporary registration of S2717F. MDU Agents observed SAUNDERS park the vehicle near the Colonial Liquor store. MDU Agents observed the CS drive their vehicle over to where the red Chevy Sonic was parked at. MDU Agents observed the CS exit their vehicle and walkover to the red Chevy Sonic and enter

5

into the vehicle and meet with SAUNDERS. The CS gave the unknown male $60 MDU pre-recorded funds and the unknown male gave the CS 1/2 gram of heroin (suspected fentanyl). Immedaitely after the controlled buy, MDU Agent Knaus showed a photo of Brian SAUNDERS to CS #2, they were able to positively identify him as the person that sold the heroin (suspected fentanyl) to the CS. MDU Agent Knaus utilized a NARK II field test kit on a small portion of the heroin (suspected fentanyl) and received a positive reaction for the presence of heroin.

b. On 07/07/2020, Metro Drug Unit Agent Thomas Knaus met with CS #2, in order to conduct a heroin (suspected fentanyl) buy. The CS called **(262) 308-3368**, (the "Target Cell Phone") spoke with Brian SAUNDERS and an unknown female, and arranged to purchase 1/2 gram of heroin (suspected fentanyl) for $60. SAUNDERS and the unknown female instructed the CS to meet them at the intersection of 18th Street and Grand Avenue in the City of Racine, State of Wisconsin. The CS waited at the previously mentioned intersection for SAUNDERS and the unknown female. MDU Agents observed Brian SAUNDERS and Angela BRZINSKI (CS knew as unknown female) arrive in a blue Nissan Altima bearing an Indiana temporary registration of L129816. MDU Agents observed Angela BRZINSKI park the vehicle near the intersection of 18th Street and Grand Avenue. MDU Agents observed the CS enter into the blue Nissan Altima and meet with SAUNDERS and BRZINSKI. The CS gave the unknown female $60 MDU pre-recorded funds and the unknown

female gave the CS 1/2 gram of heroin (suspected fentanyl). Immedaitely after the controlled buy, MDU Agent Knaus showed a photo of Angela BRZINSKI to CS #2, they were able to positively identify her as the person that sold the heroin (suspected fentanyl) to the CS. CS #2 also previously positively idenitifed SAUNDERS on a previous controlled buy. MDU Agent Knaus utilized a NARK II field test kit on a small portion of the heroin (suspected fentanyl) and received a positive reaction for the presence of heroin.

c. On 07/09/2020, Metro Drug Unit Agent Thomas Knaus met with CS #1, in order to conduct a heroin (suspected fentanyl) and crack cocaine buy. The CS called **(262) 308-3368**, (the "Target Cell Phone") spoke with Stevie PATTON, Jr., and arranged to purchase 7 grams of heroin (suspected fentanyl) and 3.5 grams of crack cocaine for $1000. PATTON Jr., instructed the CS to meet them on 22nd Street between Mead Street and Howe Street in the County of Racine, State of Wisconsin. On the way of MDU Agent Knaus driving the CS to the drug transaction location, the CS observed PATTON Jr. inside of a silver Nissan Versa bearing Wisconsin temporary registration of R7253K, parked in the 2100 block of Mead Street. MDU Agent Knaus dropped the CS off and observed s/he walk over to the silver Nissan Versa and enter into the vehicle and meet with PATTON Jr. and April DAVIS. The CS gave PATTON Jr. the $1000 MDU/DEA pre-recorded funds. PATTON Jr. handed the $1000 to DAVIS and instructed her to count the money. After

7

DAVIS finished counting the money, PATTON Jr. gave the CS the heroin (suspected fentanyl) and crack cocaine. Immedaitely after the controlled buy, CS #1 handed the suspected heroin and crack cocaine to MDU Agent Knaus. MDU Agent Knaus observed that PATTON Jr. shorted the CS and did not give the CS the correct amount of heroin and crack cocaine. MDU Agent Knaus instructed the CS to complete a recorded telephonic call to Ronnie MITCHELL at 262-321-4730 and complain to him about the CS being shorted. MITCHELL did answer the phone and instructed PATTON Jr. to meet the CS again and provide them with the correct amount. MDU Agent Knaus drove the CS over to 1300 block of Rosalind Avenue, in the Village of Mount Pleasant to complete the drug transaction. Upon arrival at the above mentioned location, MDU Agent Knaus observed the same silver Nissan Versa parked in the area. MDU Agent Knaus observed the CS exit out of his MDU vehicle and walk over to the front passenger side window of the Nissan Versa. MDU Agent Knaus observed the CS have brief contact with the occupants inside of the vehicle. MDU agent Knaus observed the CS return back to his MDU vehicle and then hand MDU Agent Knaus the remainder of the heroin (suspected fentanyl) that was owed to the CS. CS #1 had previously positively idenitifed PATTON Jr. and DAVIS from a previous controlled buy. TFO Deschler utilized a NARK II field test kit on a small portion of the heroin (suspected fentanyl) and received a positive reaction for the presence of fentanyl and heroin. TFO DESCHLER utilized the Tru Narc

8

d. device on one of the bags of crack cocaine and received a positive reaction for the presence of cocaine base.

d. On 08/12/2020, Metro Drug Unit Agent Thomas Knaus met with CS #2, in order to conduct a heroin buy. The CS called **(262) 308-3368**, (the "Target Cell Phone") spoke with an unknown male and arranged to meet in the 1900 block of Case Avenue in Racine, WI. CS #2 entered a silver Ford Fusion displaying Wisconsin dealer dealer license plate MV2525 and met with Angela M. BRZINSKI. CS #2 handed BRZINSKI $60 MDU OAF and BRZINSKI gave CS #2 approximately .5 gram of heroin. A black male was seated in the front passenger seat and CS #2 believed the male resembled Brian SAUDNERS JR., a MITCHELL DTO member. During the heroin buy, SAUNDERS JR. gave CS $2 a knotted plastic baggie corner containing a small amount of marijuana. Agent Knaus utilized a NARK II field test kit on a small sample of the suspected heroin and it tested positive for the presence of heroin.

e. On 09/14/2020, Metro Drug Unit Agent Jim Muller met with CS #3, in order to do a heroin buy. The CS called **(262) 308-3368**, (the "Target Cell Phone") spoke with a male, arranged to purchase a "half" (.5 gram heroin), and agreed to meet by Steak and Lemonade, 1813 Taylor Avenue, Racine, WI. Agent Muller followed CS #3 to the parking lot of Steak and Lemonade. At approximately 6:18 p.m., CS #3 drove to around the corner and parked in the 1600 block of Morton Avenue. CS #3 entered a gold Kia Sedona displaying Wisconsin registration KA7936 and then exited the

9

vehicle. Agent Muller met with CS #3 and the CS gave Agent Muller a knotted plastic baggie corner containing a brown powder. CS #3 stated he/she met with an individual who identified himself as "Macho". CS #3 gave "Macho" the $60 MDU OAF and "Macho" gave CS #3 the suspected heroin. Agent Muller showed CS #3 a photo of Lamarr D. MCCLELLAN, without identifers visible, and CS #3 stated the person in the photo was the same individual who identified himself as "Macho" and who sold the CS the suspected heroin. Agent Muller utilized a NARK II field test kit on a small sample of the brown chunky/powder substance and it tested positive for the presence of heroin.

f. On 09/29/2020, Metro Drug Unit Agent Jim Muller met with CS #3, in order to conduct a heroin buy. The CS called **(262) 308-3368**, (the "Target Cell Phone") spoke with Lamarr D. MCCLELLAN (aka Macho) and arranged to meet in Taylor Mart, 1813 Taylor Avenue, Racine, WI. CS #3 drove to the area of Taylor Mart and parked on DeKoven Avenue, just east of Taylor Avenue. At approximately 1:40 p.m., a blue Ddoge Avenger displaying Wisconsin registration 142XEH parked by the CS' vehicle. Agent Knaus advised CS #2 entered the blue Dodge Avenger. At approximately 1:42 p.m., CS #3 exited the blue Dodge Avenger and entered his/her vehicle. Case agents met with CS #3 and the CS stated he/she entered the blue Dodge Avenger and sat in the back seat. CS #3 gave "Macho" was the front seat passenger the CS #3 gave him the $360 MDU OAF. "Macho" then gave CS #3 six knotted baggie corners that

10

contained a brown chunky/powder stubstance.  CS #3 stated the driver of the vehicle was a black female.  Agent Muller showed CS #3 a photo of Angel Britton without visible identifiers and CS #3 stated the person in the photo was the driver of the car.  Agent Muller utilized a NARK II field test kit on a small sample of the brown chunky/powder substance and it tested positive for the presence of heroin.

  g. No subscriber name or address is listed for **(262) 308-3368** (the "Target Cell Phone").  The primary users for **(262) 308-3368** (the "Target Cell Phone") are Ronnie MITCHELL DTO members to include, Ronnie MITCHELL, Stevie L. PATTON Jr., Angela M. BRZINSKI, Menachin O. BROWN, Lamarr D. MCCLELLAN, and Brian SAUNDERS.   Probable cause to collect location information for **(262) 308-3368** (the "Target Cell Phone") for the next 45 days is based on the two Metro CSs utilizing phone number (**262) 308-3368**, (the "Target Cell Phone"), to arrange the purchase of controlled substances from numerous members of the MITCHELL DTO.

  12. The  Milwaukee DEA District Office and the Racine County Sheriff Office Metro Drug Unit is investigating the Ronnie MITCHELL DTO for distribution of fentanyl, heroin, crack cocaine, Oxycodone pills, ecstasy, and Suboxone strips. The investigation to date has included traditional law enforcement methods, including, but not limited to: interviews with confidential sources and sources of information; information from other law enforcement officers; documentary evidence; pen register trap and trace, and telephone toll data; controlled buys of drugs, controlled meetings with targets, recorded telephone calls with targets, and

11

controlled payments of money; physical surveillance, and court-authorized monitoring of the DTO's drug cellular telephone, **(262) 308-3368** (the "Target Cell Phone"), used by DTO members to facilitate their drug trafficking activities with each other and their associates.

13. On numerous dates between January 2020 and July 2020, CS #1 was interviewed and provided detailed information about the current and past drug-trafficking activities of MITCHELL DTO members. For several reasons, case agents believe CS #1 is reliable and credible. First, CS #1 has been providing information since January 2020. Second, CS #1's information is substantially against CS #1's penal interest. Third, the information provided by CS #1 is consistent with evidence obtained elsewhere in this investigation where CS-1 was utilized, and/or substantial portions of CS #1's information have been corroborated through independent investigation, including recorded conversations, surveillance, information from other confidential sources, and subsequent controlled buys made by case agents. For example, CS #1 informed case agents that CS #1 used **(262) 308-3368** (the "Target Cell Phone"), to contact MITCHELL DTO members, which call detail records confirm. Finally, CS #1 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed. CS # 1 has two 2003 misdemeanor conviction of resisting or obstructing an officer, a 2005 misdemeanor conviction for possess drug paraphernalia, a 2005 misdemeanor conviction for criminal trespass to dwelling, a 2005 misdemeanor conviction for criminal damage to property, a 2005 misdemeanor conviction for carrying a concealed weapon, a 2010 misdemeanor conviction for possess drug paraphernalia, a 2017 non-criminal conviction for prostitution – nonmarital sexual intercourse, and a 2018 non-criminal conviction for escort license required. CS #1 is cooperating for financial compensation. For these reasons, I consider CS #1 to be reliable.

14. On numerous dates between January 2020 and July 2020, CS #2 was interviewed and provided detailed information about the current and past drug-trafficking activities of MITCHELL DTO members. For several reasons, case agents believe CS #2 is reliable and credible. First, CS #2 has been providing information since January 2020. Second, CS #2's information is substantially against CS #2's penal interest. Third, the information provided by CS #2 is consistent with evidence obtained elsewhere in this investigation where CS #2 was utilized, and/or substantial portions of CS #2's information have been corroborated through independent investigation, including recorded conversations, surveillance, information from other confidential sources, and subsequent controlled buys mde by case agents. For example, CS #2 informed case agents that CS #2 used **(262) 308-3368** (the "Target Cell Phone"), to contact MITCHELL DTO members, which call detail records confirm. Finally, CS #2 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed. CS # 2 has a 2016 non-criminal arrest from retail theft. CS #2 is cooperating for financial compensation. For these reasons, I consider CS #2 to be reliable.

15. On numerous dates between December 2019 and July 2020, CS #3 was interviewed and provided detailed information about the current and past drug-trafficking activities of MITCHELL DTO members. For several reasons, case agents believe CS #3 is reliable and credible. First, CS #3 has been providing information since December 2020. Second, CS #3's information is substantially against CS #3's penal interest. Third, the information provided by CS #3 is consistent with evidence obtained elsewhere in this investigation where CS #3 was utilized, and/or substantial portions of CS #3's information have been corroborated through independent investigation, including recorded conversations, surveillance, information

13

from other confidential sources, and subsequent controlled buys made by case agents. For example, CS #3 informed case agents that CS #3 used **(262) 308-3368** (the "Target Cell Phone") to contact MITCHELL DTO members, which call detail records confirm. Finally, CS #3 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed. CS # 3 has a 2009 misdemeanor conviction for domestic abuse restraining order violation, a 2016 misdemeanor conviction for retail theft – intent conceal, a 2016 misdeneanor conviction for bail jumping – misdemeanor, and a 2016 misdemeanor conviction for hit and run – habitual criminality. CS #3 is cooperating for financial compensation. For these reasons, I consider CS #3 to be reliable.

16. Based upon my training and experience, I know that a "controlled buy" (and/or controlled contact) is a law enforcement operation in which an informant purchases drugs from a target. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded purchase money. When an informant is used, he/she is searched for contraband, weapons, and money before the operation. The informant is also wired with a concealed body recorder and monitoring device. When the transaction is completed, the informant meets cases agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The informant is again searched for contraband, weapons, and money. Additionally, all telephone calls made by the informant while under the direction and control of case agents are recorded.

17. In my training and experience, I have learned that Verizon is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service:

14

(1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

18. Based on my training and experience, I know that Verizon can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Verizon's network or with such other reference points as may be reasonably available.

19. Based on my training and experience, I know that Verizon can collect cell-site data about the Target Cell Phone.

## AUTHORIZATION REQUEST

20. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

21. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable

15

cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

22. I further request that the Court direct Verizon to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Tracfone Wireless, Inc. for a time period of 45 days from the date the warrant is signed. I also request that the Court direct Verizon to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the Target Cell Phone on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

23. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

16

Case 2:20-mj-01070-NJ    Filed 10/27/20    Page 17 of 19    Document 1

# ATTACHMENT A

## Property to Be Searched

1. The cellular telephone assigned call number **(262) 308-3368**, with International Mobile Subscriber Identity 311480570900351 (the "Target Cell Phone"), whose wireless service provider is Verizon, a company headquartered at 1095 Avenues of the Americas, New York, NY 10036.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of Verizon.

# ATTACHMENT B

## Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of forty-five days from the date the warrant is signed, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon is required to disclose the Location Information to the government. In addition, Verizon must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the Target Cell Phone on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).